## Case No. 6,832.

### HUDSON v. ADAMS et al.

[18 N. B. R. 102;[1] 3 Cin. Law Bul. 1066.]

District Court, N. D. Ohio. 1878.

ATTACHMENT—PRIORITY OF LIENS — ASSIGNEE IN BANKRUPTCY.

1. When, in an attachment proceeding, a judgment is recovered, and process issues thereon to sell the attached property, its lien relates back to the service of the attachment, and there is then no attachment process in existence upon which section 5044 can operate.

[Cited in Shelley v. Elliston, Case No. 12,750.]

[See In re Badenheim, Case No. 716.]

2. An attachment issued in an action commenced by one A. was levied upon certain lands of the debtor. Subsequently an execution issued upon a judgment recovered by one B. was levied upon the same lands. A. afterwards obtained judgment, and an order was issued thereon to sell the lands attached. The debtor having filed a petition in bankruptcy, the sale was enjoined. The assignee in bankruptcy afterwards sold the lands, and the proceeds proved insufficient to pay both judgments. Held, that

[1] [Reprinted from 18 N. B. R. 102, by permission.]

the process issued on A.'s judgment was not affected by section 5044; that the assignee, in fact, took nothing, and that A. was entitled to priority.

Application [by William J. Hudson, assignee of Charles T. Snider], to sell real estate and settle liens.

S. O. Griswold and J. K. McBride, for Wolf, Mayer & Co.

John W. Hiesley, for defendant Sloss & Co.

WELKER, District Judge. From the agreed statement of facts, it appears that, on the 20th of January, 1877, the defendants, Wolf, Mayer & Co., commenced an action against Snider, the bankrupt, in the common pleas of Wayne county, Ohio, and, having obtained an order of attachment, had it levied the same day upon certain lands of the bankrupt in that county, and described in the petition. Sloss & Co., also defendants, obtained a judgment on a cognovit in the common pleas of Cuyahoga county, on the 13th day of January, 1877, upon which execution was issued to the sheriff of Wayne county, who levied it upon the same lands which the sheriff had attached at the suit of Wolf, Mayer & Co., on the same day, but after the attachment was levied. Wolf, Mayer & Co. obtained judgment in their suit on the 13th day of March following, and an order was issued on their judgment to sell the lands attached; but before the sheriff had actually sold the lands (having advertised the same under the order), on the 30th day of April, 1877, Snider filed his petition in bankruptcy, on which he was adjudged a bankrupt on the 1st day of May. At the suit of one of the creditors, this court, on the day before the time for sale, enjoined the sale. The assignee came into the suit, and it was prosecuted in his name. He has since sold the land, and the proceeds are in court, and are not sufficient to satisfy both judgments. There is no question as to fraud or preference in the manner of obtaining these judgments. It is a mere race for priority between these judgment-creditors. It is contended by Wolf, Mayer & Co. that their lien dates back to the service of the writ of attachment. On the other hand, Sloss & Co., admitting the validity of the judgment, insist that its lien only dates from the time of its rendition, to wit, March 13, 1877, and that their levy previously made has priority. Wolf, Mayer & Co. cite Code Ohio, §§ 205, 221, 228; Henkelman v. Smith [42 Md. 164]; In re Cook [Case No. 3,152]. Sloss & Co. cite 14 N. Y. Sup. Ct. (7 Hun), 288; 42 Cal. 528; and 37 Conn. 341. Both these parties claim under state liens, which are protected and saved by the bankrupt act [of 1867 (14 Stat. 517)].

It is, however, contended, on the part of Sloss & Co., that the lien which Wolf, Mayer & Co. otherwise would have had is divested by the operation of section 5044 of the bankrupt act. This section declares that the title of the assignee shall relate back to the date of the filing of the petition, and vest in him all the title then held by the bankrupt to real and personal estate, although the same may then be attached on mesne process, and shall dissolve any such attachment made within four months, next preceding the commencement of the bankruptcy proceeding. Undoubtedly this section was made part of the act from various decisions arising under the bankrupt act of 1841 [5 Stat. 440]. In that act, the same as the present, state liens were preserved. In many of the states suits only were commenced by attachment on mesne process, and it was held that the lien of judgments obtained thereon related back to the service of the process. See In re Cook [supra]. To prevent this sort of preference, section 5044 was adopted. It is to be observed that this section by its own terms relates to existing attachments. It says that the title of the assignee shall relate back to the filing of the petition, and vest in him the title of property attached on mesne process, and such attachment shall be dissolved, provided it was such a one within four months from the commencement of the bankruptcy proceeding. In this case, however, Wolf, Mayer & Co. proceeded to and did obtain judgment nearly two months prior to the filing of the petition. By the operation of section 5044, all the title which Snider had in the land became vested in the assignee. It was bound, however, by both judgments, and subject to their payment; and as the property was insufficient to pay them both, the assignee in fact took nothing. And the question is, does the force of this section operate to discharge the lien which Wolf, Mayer & Co. obtained by the service of their attachment, for the benefit of Sloss & Co., subsequent levying creditors? No question of equity exists. They stand on their legal rights. Such rights as the state law gives them they have, and Wolf, Mayer & Co. have priority, unless section 5044 operates to discharge and vacate their lien. In the case cited from 12 N. B. R., substantially this question was decided. In that case personal property was attached and sold during the pendency of the attachment proceeding. Subsequently, a judgment was obtained, and the money was ordered applied upon the judgment. After the recovery of the judgment the petition was filed within four months from the commencement of the attachment proceeding. The assignee claimed the money. On very full argument, the court held that the assignee could not recover; that although the property had been seized and sold under the attachment process, when the judgment was recovered it was no longer an existing process, but was part and parcel of the judgment and the

money properly applied thereon. In the case cited from 14 N. Y. Sup. Ct., property was attached, and the debtor within a few days afterwards adjudged a bankrupt. Neither the assignee nor the debtor moved to discharge the attachment, and subsequently there was a judgment rendered against the bankrupt in the attachment proceedings, and it was claimed by the attaching creditor that the property attached should be applied in satisfaction of the judgment. The court held it was unnecessary to have moved to discharge the attachment, and refused the order. The case from 37 Conn. does not bear upon the question. In that case the attachment was levied more than four months preceding the bankruptcy, and on an application after bankruptcy for a full judgment the court held that the plaintiff could only have a qualified judgment subjecting the property attached. In the case cited from 42 Cal., the creditor commenced suit against his debtor, and garnished an insurance company. The garnishee answered admitting the indebtedness, but saying it was not due. Subsequently the creditor obtained judgment and issued an execution, but no levy or action was taken thereon. The debtor was adjudged a bankrupt, and the assignee brought suit for the money against the garnishee, making the creditor a party, and it was held that the assignee could recover the money. The court put it expressly upon the ground that this being personal property, the only lien which the plaintiff had was his attachment proceeding, and that he had acquired nothing more by his judgment. The court also states that if the execution had been levied the money would have been held by the creditor. If we look at sections 205, 221, and 228 of the Ohio Code, it will be seen that the property attached is bound from the date of the service of the order of attachment, and that when the plaintiff has obtained his judgment, upon that judgment an order of sale in the nature of an execution could be issued and proceeded with as an execution issued upon a judgment; and on this order of sale the attaching creditor has priority over judgments levied after the service of the attachment. Section 228 provides that prior to the obtaining of the judgment the attachment may be dissolved. The effect, therefore, of these proceedings is, that when in the attachment proceeding a judgment is recovered, and process issues upon the judgment to sell the attached property, its lien relates back to the service of the attachment. There is then no attachment process in existence upon which section 5044 can operate. In this case the order was issued, and the sheriff was proceeding to sell. Section 5044 in nowise affected this subsequent process; there was nothing upon which it could operate. By the state law the lien of Wolf, Mayer & Co. has priority, and a decree may be entered accordingly.